Thank you. Good morning. My name is John Barr, and I represent Leonard Brown. The case is here because, unfortunately, the way that State Farm elected to deal with Mr. Brown, he would have been much better off if the lease boy had been uninsured than that he had coverage with the same company. Because if he'd been uninsured, Mr. Brown would have been able to proceed to deal with his own company under his own policy. Because he and the lease boy were both insured by State Farm, State Farm was at liberty to prevent him from getting at his own policy pretty much without any particular concern for the consequences of doing that. Because of the Maradi Shalal case and the fact that there could be no third-party bad faith. Could you explain something to me? As a practical matter, did he get any less money other than the claim for attendance at trial as a result of having State Farm act as the insurer for both the lease and himself? He got the same amount of money. He had to sit through an 18-day jury trial instead of a half-a-day arbitration to do it. And it took years instead of it being something that could have been resolved in a fairly short period of time. Because unfortunately for Mr. Brown, his case against the lease boy was consolidated with the lease parent's wrongful death case against the City of Reading. And so we wind up with a man with an injured thumb dragged through a serious wrongful death case against a public entity when it all could have been avoided. We offered to let them simply pay whatever they thought it was worth under the lease case and go to arbitration. If they're right, that's all they ever pay. And if they're not right, he gets the rest of the money under his policy. Counsel, what's your best case authority for the proposition that that action constitutes bad faith? The. Probably the best case authority for that is. The Shacklesham case, which talks about where facts are not in dispute. The issue of whether or not someone's been dealt with in good faith is a matter of law that can be decided. When the facts are not in dispute, are you saying that there were no facts in dispute, no coverage issue disputes in this case? There was no coverage issue whatsoever. There was a there was no issue as to Mr. Brown's negligence. His the fact that he was not in any way responsible for this accident was an innocent victim, was conceded by defense counseling. And Vardair repeated an opening statement, repeated in closing argument. But it wasn't the trial to determine the extent of Mr. Lisa's responsibility. What was the purpose for the trial? The purpose for the trial was to was to determine the extent of Mr. Lisa's responsibility for Mr. Brown's injuries and the extent of the city's responsibility for the death of Adam Lease. Wouldn't that impact upon the amount that would be paid to the client? It would impact in insofar as the amount of general damage is a concern. But that's something an arbitrator can decide as well. Well, do you have any I mean, the difficulty is where you have the disputes here. I don't say it was unreasonable to go to trial on those disputes. And in the end, what I'm still having trouble with in the end, he gets the full amount of this coverage. And so how under a bad faith claim, do you meet that prong? Well, I think that the where the bad faith comes in is is in the the on the one hand. Here's the problem. I guess it boiled down to you think he was jerked around. And that's why that's the bad faith claim. I think so. I mean, State Farm, as his own insurer, paid almost twenty thousand dollars in medical bills conceding that they were a result of this accident. And then they, as far as at least as insurer, would not pay fifty fifty thousand dollar policy. The and the the problem is that they can prevent him from getting at his own insurance cover. I'll tell you, you're insurance. If I always thought that the most dangerous situation for everybody, because you can do this kind of thing. I think State Farm did that. In fact, there is a report in the record from State Farm's attorney to the company. Sixty six and sixty record where he just. So simply let them pay whatever they thought it was worth and then uncovered that they weren't going to do that. They had a better chance at trying for an arbitrary account. They would have been admitting liability. But to use their position as the insurer for the adverse party, I think, to keep him. It had no insurance at all. Well, I'm trying on the legal theory because I look at the brief in which that. State Farm defense has to be tempered by real as a. In defending the suit. So. What I think you're arguing is an inherent. A third party first party in a situation. In insurance law, it would suggest that that actually is a legal conflict and gives rise to a bad faith claim. So maybe you can add on that. Well, there's. And the problem is. The case on this issue. I mean, I agree that. Brown. And that's what. But that's not helping us out because. I understand. And that's where you get back to Schwartz. Actually, Schwartz versus State Farm on that issue. Where you had two insureds who were both very one named insured and one an additional insured passenger, both of whom were very badly injured in the accident. They gave all the money, basically all the money to their named insured. And saying that they had the greater obligation to him and got sued by the additional insured. The difference in that case is there, in effect, wasn't enough money to go around. So you're kind of robbing Peter to pay Paul, as I recall that case. And here he gets everything he was would be entitled to in the end. Less the cost, inconvenience and so forth of going through an 18 day trial. I mean, I will tell you, quite frankly, our brief is not what I wished it would be. And Colonel Faber, who's been writing these for me for years, can't explain what happened on this one. But. Who's writing these briefs? A retired Marine Corps colonel who has been practicing law for about 15 years, who does all our legal research and writing. And quite frankly, this first time he's ever let me down. There's a bunch of stuff that's supposed to be in here. Did you review it? Unfortunately, I was out of the country when it was filed. And so I looked at it this weekend in preparation for this argument. As I said, I've got years of experience with this guy and I've never seen him do this before. So did I review it in a timely fashion? No. Did I review it? Yes, I did. And it's unfortunate. And he and I have talked about him. We'll talk some more. But the point is that State Farm didn't just not pay Lenny Brown, but they did a bunch of other things to help Lease, Adam Lease's family. For example, State Farm had a total of $25,000 in collision subrogation on the two vehicles. And the lawyer that was representing the Lease family had filed a cross complaint against the city of Reading to recover their $25,000. It wound up being dismissed on the eve of trial. And, frankly, it was because there's no way the man is going to be able to stand up and attack Lenny Brown on the other hand but try and collect back for his vehicle, which had been paid for under the Lease policy. But their claims manager, Craig Nunn, in his deposition testified the reason for doing it was to help the Leases and help them recover the maximum that they could recover in their lawsuit. Well, nobody was giving Lenny Brown any of these considerations. Okay. Well, explain how that was adverse to Mr. Brown, that particular action. The particular action was adverse to Mr. Brown because it made it possible for State Farm to go to trial as opposed to having to do something else. And it shows an atmosphere within the company that they've looked at this thing and have decided that they like the Leases better than they like Brown or something, and they're busy doing things as lease insurer to help the lease family. You have to remember the lease family themselves didn't have any exposure. It's in the records. But on the eve of trial, Mr. Brown dismissed his action against the parent, which got rid of also a negligent entrustment cause of action because he didn't want to go to trial against them. So we were proceeding under the insurance code section that says you can only collect from the insurance company. So this is all between Leonard Brown and State Farm by the time the trial starts. Counsel, did you sign your brief? No, I did not, Your Honor. Okay. So someone signed your name for you? No, it was signed by Mr. Faber, I believe. Oh, okay. It was signed by Colonel Faber, who wrote it. Oh, I see. Well, he works for me. I take full responsibility, but I will tell you I was nonplussed. Let me ask you to address one thing, and that is his attendance at trial. The district court said he didn't really need to be there the whole time, and that, to me, frankly, seems a little odd in that if you're a party in a lawsuit, you're entitled, of course, to be in the courtroom the entire time. So the difficulty is that the district court said there's really not any relationship between those damages and the alleged breach, but I would appreciate if you could address that. Sure. The district court is correct as a legal matter. In California law, civil action can proceed without one of the parties being present. As a practical matter, you might as well not file it. If you've got 12 people sitting there in the jury box who are required to be there every day and you don't care enough to go and show up, they're going to hate you. That's the first thing. Second thing is I don't care how well a trial lawyer talks to and debriefs and discusses things with his or her client, that client knows more about the lawsuit than anyone and they're the most important person. I agree with you on all that. Anybody who's been a trial lawyer knows that you don't want to have an empty chair. The question is how does that legally flow through the contract here? Well, because I think he's got an absolute right to show up and defend himself. I think he's got an obligation under the terms of our fee agreement to show up and defend himself and represent himself. And his failure to do so means that he's given a Hobson's choice of going to work and making a living and not having to use up all his vacation or a bunch of unpaid time to come to the trial and have the best possible shot he can have or do it and lose whatever he loses. And that's unfortunately the situation he was in. And I think that technically Judge Shub's comment is correct, but as a practical matter, there isn't any way he could have done that. And I think that there's no way State Farm could have expected him to do that. There's no way they could have expected him not to be there every day. Well, I guess the question I have is that happens a lot where the insurance company is representing the plaintiff in a variety of actions in an auto context, and usually they don't get compensated for showing up, particularly when the company pays policy limits. So what is the legal basis for the payment? Actually, most insurance policies, if you're there as a defendant, provide for payment of a certain amount. Right, but this is... The only reason that the insurance company could drag Leonard here in this case is really because if he was insured personally with Cal Farm, we wouldn't be here, or with 3A or anybody else. But they were able because if Cal Farm decides to jerk him around under California law, there's nothing he can do about that because they're not his insurance company. But State Farm is. And they accuse us of blurring the lines between being his... Yeah, but I still need probably a more precise answer to my question, which is what's the legal basis for imposing the trial day compensation? For imposing, I'm sorry? The trial day compensation on State Farm. Well, because the legal basis is that in order to show that their conduct is bad faith and is compensable, you have to show that it costs you something. And their conduct cost him this money, cost him this lost vacation time, because they insisted on taking this free shot at him to cut him off from getting his own policy. If the jury brought in a verdict for $49,000, that would have been the end of it for him. And it costs him nothing because they can't possibly get into a bad faith situation because we're proceeding under the insurance code. So it just is a freebie that actually got created sort of by him because he elected not to sue the grieving parents. So let him out. And I'd like to reserve the time I have left unless the Court has further questions. I don't think so. Thank you. Thank you. Ma'am, Police Court, Mark Bonino from the Roper's office here on behalf of State Farm Mutual. First of all, just to start with a point kind of left by some of the questions, the underlying case of Mr. Brown in the trial court was a three-party case, not a two-party case. It's true no one contended that Mr. Brown was at fault in the accident. He was basically standing still in the left turn lane. But what was in dispute was whether or not Adam Lease was at fault for this accident because, as the Court recalls from the briefs, Mr. Lease was proceeding southbound on the highway when the City of Redding police car made a left turn in front of him. Now, the original traffic report prepared by the City of Redding said it was Mr. Lease's fault because he had been speeding. It turned out that the evidence really didn't support that finding, and, in fact, even the multidisciplinary report that was done a few weeks later was unable to come up with any evidence as to whether Mr. Lease was speeding. And ultimately, during the trial, it was determined by the jury that not only the preponderance of the fault was attributable to the City of Redding police car, but the overwhelming fault, 80 percent of the fault, was attributed to the police car that made the left turn in front of Mr. Lease. The significance of all of this is, from the standpoint of the Brown claim, that if Mr. Brown had not been able to establish some fault on the part of Mr. Lease, there would have been no recovery in the underlying case, and there would have been no recovery under the underinsured motorist claim. That determination of liability, which it very well could have gone 100 percent liability to the City of Redding, zero for Mr. Lease, would have meant no claims at all. So this trial that Mr. Barr has indicated as some kind of interesting sideshow that didn't have anything to do with the underinsured motorist claim was, in fact, central to the ability of Mr. Brown to proceed at all on the underinsured motorist claim. Now, the claim that, in addition to that, the State Farm was presented with two separate and independent duties as a result of the circumstances of this case. One of them was to deal with Mr. Brown's underinsured motorist claim to the extent that he had a claim. The other was to defend Mr. Lease, and Mr. Lease is a State, and Mr. Brown was seeking to recover against Mr. Lease, and the other one was in Pecunias. Those are facts that are obviously on whether there would even be an underinsured motorist claim in this case. The assertions that have been made by Mr. Brown against State Farm do not involve some kind of delay in handling the underinsured motorist claim. They're not saying that after the determination was made in the trial court that State Farm delayed in paying the money. They can't, because State Farm paid the money within the deadline set by Mr. Barr. The thing that they are complaining about, the three things they're complaining about, are all acts that took place in the defense of the underlying liability claim. With regard to those acts, Mr. Brown was a third-party claimant, just like any other third-party claimant. And I disagree with what Mr. Barr said earlier, that, well, if Mr. Brown had been insured by Cal Farm, it would have come out differently. The answer is the exact same things would have happened, or CSA or anybody else, because State Farm still would have been required to defend Mr. Lease from the underlying case, and Mr. Brown's insurer, whoever it was on the underinsured motorist claim, would not have made any payment until the underlying case was concluded, because under P3 of the insurance code, under Hartford v. Mockery from the California Supreme Court, they cannot determine their liability until that happens, and they're not required to make any kind of payment until that happens. Mr. Barr says, well, yes, that's okay. They could defend Mr. Lease, but they should not have been allowed to vilify Mr. Brown. Well, first of all, the record or parts of the transcript are in the record for the court to review. They certainly attack the credibility of Mr. Brown, because Mr. Brown in part was asserting that Mr. Lease had been speeding. At least that's what he asserted in the police report. It turned out at the time of trial he backed off of that, but his credibility was at issue. It was at issue for the purpose of defending the position of Mr. Lease. Mr. Pynchon, the attorney for Mr. Lease, could do nothing other than attack his credibility and attempt to establish that Mr. Lease was not responsible for this particular claim. The plaintiffs say, well, no, this is still bad faith, because where you have this situation of Mr. Brown, who has a first-party claim, and also has a third-party claim, it's true that State Farm should be able to defend Mr. Lease, but they shouldn't do anything that tends to diminish the value of Mr. Brown's underinsured motorist claim. Well, what I didn't understand is that if they don't go after Mr. Brown to impeach that testimony, then he might be left out in the cold because Mr. Lease might come out scot-free. Is that right? In other words, he wouldn't even invoke the UIM coverage if you didn't get Lease on the hook for something. Exactly, Your Honor. Or is it just a question of degree of vilification? I just was having trouble understanding the causal connection, because in the end it inerrs to his benefit, is my understanding.  No, Your Honor. I'm sorry. I want to make sure I'm answering your question correctly. Maybe I didn't listen to your whole question. Assuming the underlying trial had resulted in a verdict of 100% fault, City of Redding, zero-fault Lease, there is then a determination in which Brown is a party that there is no fault on the part of Lease, who is the uninsured motorist, the only uninsured motorist, because the City of Redding is not an uninsured motor vehicle because it's a government entity. Therefore, there is no underinsured motorist. And Mr. Brown is out. Brown is out. So that's what I'm saying, is that the impeachment actually inerrs to Mr. Brown's benefit in the trial because he has to get Mr. Lease with some liability, actually, correct? I think the impeachment is of Mr. Brown, though, Your Honor. Right, but the impeachment is actually to his benefit in a funny way. I mean, it may seem counterintuitive, but isn't that right? Is that if they don't impeach Mr. Brown because of the speeding, you've got to get Mr. Lease speeding in order to get some liability on his part, right? Right, but they did. Mr. Brown changes his testimony back and forth on that. He moves his testimony back and forth, yes, Your Honor. But the point I'm trying to get to is that I'm not going to be a little forthright with you, because I'm not sure how it benefits Mr. Brown under those circumstances, but the point is that in order to defend Mr. Lease, it has to be done, because that is the thing that is holding Lease and the Lease estate into this case, and State Farm, as a separate duty under the policy issued to Mr. Lease, which is a separate policy, has to provide that full defense, which they do. And it includes things like disputing Mr. Brown's claims, impeaching Mr. Brown where it's appropriate, and doing other things, relying on their own experts. We get into the whole issue of the medical experts and whether State Farm improperly relied on the independent medical examination. And, again, the Brown side has raised three cases that deal with Social Security disability claims, where, as this Court well knows because you deal with them, there's a completely different standard when you have a non-examining doctor, which is what those three cases involve. Here you did, in fact, have, in the Brown-Lease case, you did have an examining doctor. In those cases, with a non-examining doctor, the standard of proof is clear and convincing evidence. You don't have that kind of thing here. State Farm did, in fact, provide that defense, which it was required to provide. Now, there are a lot of collateral issues that kind of cut across this claim. For example, State Farm made the medical payments to Mr. Brown. Well, that's true, but medical payments are made where an insured is injured in an accident regardless of who caused the accident, whether it was caused by the insured, by some uninsured motorist, by somebody who's got a billion dollars in insurance coverage. Still, the medical payments are made. That's first-party, in essence, health coverage, as long as it's a result of some accident. That doesn't mean that State Farm is making some kind of admission that Mr. Lease was responsible in this case. And so State Farm had these duties. It did, in fact, perform on all of these duties. It did, in fact, defend Mr. Lease once that was finished, and that had the effect of collaterally stopping the issues of liability and, for that matter, damages. It paid on the lease liability policy, and then within the deadline set by Mr. Barr, it paid on the underinsured motorist coverage, which had been triggered by the outcome of the underlying case. And there is no assertion of any delay in those two acts, and therefore there is nothing that can be a basis for a claim of breach of the implied covenant here. The court asked, you know, what are the cases that say things like that? Farmers v. Hurley is a case involving a California UIM claim, where there was an allegation against farmers that somehow farmers should have admitted the liability and accepted the liability and gone on to arbitrate, and the Court of Appeal in California said no. The California statute, 11580.2p3 and p4, require that there be the exhaustion of the underlying policy before the UIM claim can proceed, and they say the legislature specifically selected that. There are alternative standards out there from which the legislature could pick. They selected that exhaustion standard, and therefore it is applied as a matter of California public policy, as declared by the legislature here. So this is a situation where State Farm did what it was required to do under the policies that had been issued. This is not like Schwartz v. State Farm. Schwartz v. State Farm involved two couples who were both insured under the same policy. There they had competing claims to the policy limit, and the Court of Appeal said under those circumstances State Farm can't pay one of the couples, leaving the other couples with inadequate asset or inadequate policy benefits to fulfill their recovery. That's not the same situation here. You do not have Leeson Brown being insured under the same policy, competing for the same policy benefits. You have separate obligations, separate first and third party obligations, owed by State Farm to Mr. Brown. The first party obligations are broad, but don't trigger until the underlying claim is resolved. The third party obligations are to treat Brown like any other third party claimant, which for the last 15 years under California, since Maradi Shalal means, cannot be sued for breach of the implied covenant or breach of 790. I hope I've helped. If there's any further questions. Thank you, Your Honor. Several matters, Your Honor. First, the lease family, lease estate were in no way at risk for Mr. Brown's claim, because if you look at the complaint filed in the state court that begins at page 14 of the supplemental record, and read it, there was never a claim. It doesn't allege the filing of a claim against the lease estate. There was a claim never filed against the lease estate, and that means as a matter of law that Mr. Brown's recovery is limited to the insurance coverage. It didn't make any difference if the estate had oil wells. Once he dismissed the lease parents on the eve of trial, his only possible. So this was between Brown and State Farm all the way through. They could have simply paid some nominal amount, as we offered, and gone to arbitration. If the arbitrator found there was no responsibility for lease, there would be a zero recovery under the UIM then as well. Now, the point of the medical payments is not that lease policy might be responsible for all of it, although it would be if there's a finding of any fault because of special damages, not general damages, but also State Farm in paying those admitted that they're the result of this accident, because they don't pay for medical payments unless they're the result of an accident, the accident in question. So when they made those payments, State Farm was agreeing that he had almost $20,000 in medical expenses that relate to this accident, 100% of which would be payable out of the lease policy if there's a finding of any unreliability at all. State Farm had already paid Mr. Brown his deductible out of the lease policy. They'd paid $17,000 of damage to his vehicle out of the lease policy. Whether or not the lease policy was responsible to Brown is really not an issue. The only real issue in this case is how much and does he get to his underinsured motorist coverage. Farmers versus Hurley is a really interesting case because it shows why under certain circumstances you need to require complete payment, because otherwise if you've got two different companies, company one that has the underinsured coverage can cut a sweetheart deal, as apparently tried to happen in this Farmers versus Hurley case, and get out cheap, leaving the person to pursue their own UIM coverage. There's no possibility of a sweetheart deal when there is the same insurance company on both sides of the thing. And you have to remember, the California underinsured uninsured motorist statute was a very cumbersome statute before they grafted underinsured motorist coverage on it. And in a couple of other areas, the courts have ignored plain language of this statute because that didn't make any sense in the area the statute requires, for example, that you consent, that the underinsured motorist carrier has to consent to a settlement. That doesn't make any sense. You can't get to it if you don't settle. And so the Supreme Court tossed that out. There was another provision that requires that there be either a lawsuit or formal arbitration demanded within a year. Well, it makes no sense to file a lawsuit against somebody you settle with. The Supreme Court threw that out. And this is simply another place where this cumbersome statute that has tried to be a catch-all for all things simply doesn't make sense. The exhaustion part of it doesn't make sense when you're dealing with the same insurance carrier on both sides, and it can act very much as it did here to the detriment of the insured. Unless there are questions, I have nothing further.  Thank you. Case of Brown v. State Farm is submitted. We'll take a brief recess, and counsel for the Sandmore v. Robles case may come up and get seated.
judges: Browning, McKeown, Rawlinson